# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| BRANDI NICOLE ADAMS, | CASE NO. 1:22-CV-01765-DAC |
| Plaintiff, | MAGISTRATE JUDGE DARRELL A. CLAY |
| vs. | **MEMORANDUM OF OPINION AND ORDER** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## INTRODUCTION

Plaintiff Brandi Nicole Adams challenges the decision of the Commissioner of Social Security denying supplemental security income (SSI). (ECF #1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). On October 4, 2022, pursuant to Local Civil Rule 72.2, this matter was referred to me to prepare a Report and Recommendation. (Non-document entry dated Oct. 4, 2022). On December 5, 2022, the parties consented to my exercising jurisdiction under 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (ECF #8). Following review, and for the reasons stated below, I **AFFIRM** the Commissioner's decision.

## PROCEDURAL BACKGROUND

Ms. Adams filed for SSI on September 6, 2019, alleging a disability onset date of June 30, 2019. (Tr. 182). Her claim was denied initially and on reconsideration. (Tr. 91-99, 101-108). Ms. Adams then requested a hearing before an administrative law judge. (Tr. 124-26). Ms. Adams (represented by counsel) and a vocational expert (VE) testified before the ALJ on November 16,

1

2021. (Tr. 63-90). On November 30, 2021, the ALJ issued a written decision finding Ms. Adams not disabled. (Tr. 27-47). The Appeals Council denied Ms. Adams' request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-7; *see* 20 C.F.R. §§ 416.1455 and 416.1481). Ms. Adams timely filed this action on October 4, 2022. (ECF #1).

FACTUAL BACKGROUND

I.    PERSONAL AND VOCATIONAL EVIDENCE

Ms. Adams was 30 years old on the alleged onset date, and 33 years old at the administrative hearing. (Tr. 68, 91). She graduated from high school and has worked as a pizza delivery driver. (Tr. 68, 69).

II.    RELEVANT MEDICAL EVIDENCE

Ms. Adams alleges her chronic pain and mental health issues limit her ability to work. (Tr. 216). In 2006, she was diagnosed with calcific tendinitis of the shoulder. (Tr. 284).

X-rays from 2018 revealed mild cervical and mild thoracic spondylosis. (Tr. 102). In October 2018, Ms. Adams lost her balance and fell onto her outstretched right hand, "jamming" everything in her mid-back and neck. (Tr. 325). On November 8, 2018, she attended a physical therapy evaluation for her neck and thoracic strain. (Tr. 324). She reported intermittent numbness and tingling at the base of her neck but could not identify any positions or activities that induced the symptoms. (Tr. 325). Ms. Adams endorsed pain with daily activities, especially those involving overhead reaching. (*Id.*). Physical assessment revealed limited cervical range of motion, decreased strength, and poor balance. (Tr. 326). Ms. Adams attended three physical therapy sessions before requesting discharge. (Tr. 318-22).

At the end of May 2019, Ms. Adams' then-boyfriend assaulted her. (Tr. 311). She suffered a facial injury and was sore all over, prompting her to meet with Kathleen Malear, APRN-CNP. (*Id.*). She also reported continued headaches occurring once a day and increasing in severity over time. (*Id.*). Physical examination revealed a head contusion and Ms. Adams was noted to be anxious. (Tr. 311, 313). NP Malear prescribed Maxalt for migraines, Buspar for anxiety, and trazadone for sleep disturbance. (Tr. 314).

On June 11, 2019, Ms. Adams followed up with NP Malear and reported feeling the Buspar was helping, but not enough. (Tr. 304). She also reported Maxalt was helpful for her headaches. (*Id.*). NP Malear prescribed Paxil. (Tr. 307). On June 24, 2019, Ms. Adams called NP Malear's office and stated she discontinued Paxil because it was making her feel worse. (Tr. 303). NP Malear prescribed clonazepam. (*Id.*).

On June 20, 2019, Ms. Adams attended a mental health evaluation at Family Solutions of Ohio. (Tr. 274-82). There, she reported feeling severely depressed; she missed work because she did not want to leave her bed, lost interest in her four children, and had trouble falling and staying asleep. (Tr. 274). She was tearful through the entire assessment and endorsed anxiety, daily panic attacks, and feeling jumpy and overwhelmed. (*Id.*). Ms. Adams reported her mental health symptoms have been more severe and debilitating since her assault and requested in-home counseling. (*Id.*). She felt her medications were not effective and made her more anxious, but later admitted she does not like to be on medication and usually does not take them. (Tr. 275). She presented as sad, friendly, flat, and guarded. (Tr. 279). She was "disheveled, distracted at times" and appeared anxious. (*Id.*). Ms. Adams' speech and thinking "appear slowed by depressed mood." (*Id.*). The evaluator also noted Ms. Adams displayed other symptoms of anxiousness including

restlessness, irritability, trembling, and sweating. (Tr. 279-80). The evaluator recommended community psychiatric supportive treatment (CPST) over the telephone and individual counseling in the future. (Tr. 282).

On July 3, 2019, Ms. Adams met with Robert Thomas, M.D., and described difficulty sleeping, increased tearfulness, and increased anxiety, for which she requested a medication adjustment. (Tr. 294). Dr. Thomas prescribed Cymbalta and referred her to a psychiatrist and a psychologist. (Tr. 297).

On July 24, 2019, Ms. Adams met with NP Malear and endorsed symptoms of anxiety including difficulty concentrating, fatigue, feelings of losing control, insomnia, irritability, psychomotor agitation, racing thoughts, shortness of breath, and sweating. (Tr. 292). Ms. Adams reported the mental health medications were not effective. (*Id.*). She admitted to discontinuing Buspar and had not yet started the new prescription for Cymbalta. (*Id.*). Physical examination was normal, except Ms. Adams presented as anxious. (Tr. 293). NP Malear refilled her prescriptions for Maxalt, trazodone, and Buspar, and prescribed Xanax for anxiety. (Tr. 293-94). On July 30, 2019, Ms. Adams reported that Xanax helps but wears off. (Tr. 288). NP Malear increased her dose of Xanax. (Tr. 290).

On October 1, 2019, Dymond Caver, MA, QBHS, Ms. Adams' case manager, completed a Daily Activities Questionnaire. (Tr. 374-75). Ms. Caver noted Ms. Adams appears to get along well with family, friends, and neighbors, but has difficulty interacting in public and going to public places. (Tr. 374). Ms. Adams did not get along well with her employer and coworkers because they laughed at her mental health issues and did not take her seriously. (*Id.*). Ms. Caver felt Ms. Adams' poor stress tolerance, severe anxiety, and physical limitations prevented her from working. (*Id.*).

4

Ms. Adams can force herself to keep up with household chores, but her depression makes it difficult to maintain personal hygiene. (Tr. 375).

On February 10, 2020, Ms. Adams returned to NP Malear for anxiety and panic. (Tr. 453). She appeared anxious and depressed but displayed normal attention, perception, behavior, thought content, memory and cognition, and judgment. (Tr. 455). On July 2, 2020, NP Malear provided a referral for psychiatric treatment. (Tr. 437). As of July 30, 2020, Ms. Adams had not yet scheduled an appointment with a psychiatrist. (Tr. 435).

 On August 11, 2020, Ms. Adams called NP Malear's office and reported her mental health medications, Xanax and Cymbalta, were no longer effective and she endorsed feeling stressed, anxious, and angry all the time, having trouble staying on task, and difficulty sleeping. (Tr. 434). NP Malear stressed the importance of making an appointment with a psychiatrist, noting Ms. Adams had received three calls with instructions to call back and did not do so. (*Id.*).

Between December 2019 and October 2021, Ms. Adams continued to meet with Ms. Caver and other case managers over the telephone, at her home, and in the community for supportive therapy and education on coping skills. (*See* Tr. 708-839, 852).

III.  **MEDICAL OPINIONS**

On November 18, 2019, state agency medical consultant Gerald Klyop, M.D., reviewed Ms. Adams' medical records and determined Ms. Adams can lift twenty pounds occasionally, ten pounds frequently; stand and walk for six hours and sit for six hours in an eight-hour workday; frequently climb ramps and stairs; occasionally climb ladders, ropes, and scaffolds; frequently balance, stoop, and crouch; occasionally kneel and crawl; and occasionally perform overhead reaching bilaterally (due to arthritis in the shoulder). (Tr. 95-98). On June 10, 2020, state agency

medical consultant Gary Hinzman, M.D., reviewed updated records and adopted Dr. Klyop's assessment, except Dr. Hinzman determined Ms. Adams was not limited in her abilities to climb ramps and stairs, balance, kneel, and crouch. (Tr. 107). He agreed with Dr. Klyop that Ms. Adams was limited to occasional overhead reaching bilaterally in light of her decreased cervical range of motion and thoracic spondylosis. (*Id*.).

The ALJ determined these assessments were less persuasive. (Tr. 40). The ALJ noted the state agency consultants' opined limitations were consistent with the effects of Ms. Adams' cervical and thoracic spondylosis with associated pain and restricted range of motion but noted Ms. Adams' subjective complaints and ongoing treatment for migraines necessitated a limitation to avoid concentrated exposure to a loud or very loud work environments. (*Id*.). The ALJ concluded "a greater level of limitation than included in the residual functional capacity above is not consistent with the claimant's conservative treatment for her physical impairments since the alleged onset date, with objective findings of normal coordination, intact musculoskeletal range of motion, normal muscle tone, and no noted gait abnormalities." (*Id*.).

Jennifer Swain, Psy.D., and David Dietz, Ph.D., state agency mental health consultants determined there was insufficient evidence available to determine the severity of her limitations. (Tr. 96, 105). The ALJ determined these assessments were not persuasive:

> [T]he evidence contains persistent reports of symptoms of depression and anxiety, along with clinical findings of distractibility, mood abnormalities, tearfulness, slowed thinking, is consistent with the functional limitations included in the residual functional capacity above. Greater limitations than those described, however, are inconsistent with the reported improvement in her symptoms with treatment, her ability to drive, care for her children, and interact with family, and evidence of a cooperative, friendly presentation with normal behavior, as well as normal mood, affect, and judgment.

(Tr. 40-41). For the same reasons, the ALJ found Ms. Caver's daily activities assessment less persuasive as inconsistent with those findings.

## IV.  ADMINISTRATIVE HEARING

On November 16, 2021, Ms. Adams and VE Kevin Yi testified at the administrative hearing. Ms. Adams lives with her four children and two other children who came to her after a death in the family. (Tr. 69). Five of the children are at school during the day and one stays home with Ms. Adams. (Tr. 78). Ms. Adams testified she does not stay on top of household chores like she should because she does not have the motivation to do what needs to be done; she would rather just sit. (Tr. 78). On some days, she cleans everything; on others, nothing gets done. (Tr. 79). On some days, she is so sore or has so little motivation she will tell her children to make dinner for themselves. (Tr. 79). She has more bad days than good days. (Tr. 80).

Ms. Adams endorsed hearing issues in her left ear, permanent damage to her right hand and shoulder, depression, and anxiety. (Tr. 70). Ms. Adams also has cancer, but it does not affect her functioning. (Tr. 71). She experiences constant pain in her right shoulder and periodic numbness and tingling in the arm. (Tr. 72). She has difficulty using spray bottles because the squeezing motion and making a fist are painful. (Tr. 70-71). She can write for about five minutes before pain shoots up her arm. (Tr. 71).

Ms. Adams cannot hold a knife or a spatula for more than a few minutes before her right hand begins to cramp. (Tr. 82). She will use her left hand but is not very adept with it. (*Id.*). Holding a hairbrush is a struggle, but she can dress herself. (Tr. 83). When in a noisy environment, as at her part-time job, she cannot hear the phone ringing and sometimes struggles to hear while talking on the phone. (Tr. 83).

7

Ms. Adams has significant difficulty falling and staying asleep, sleeping about four hours a night and feeling exhausted the next day. (Tr. 83-84). She endorsed memory issues and chronic back pain. (Tr. 84). The pain begins just below the shoulder blades and extends to the lower back. (*Id.*). Sitting and standing worsen the pain. (*Id.*). When sitting, she leans to one side to reduce lower back pressure. (*Id.*). Ms. Adams treated with a chiropractor but stopped treatment after a friend passed away. (*Id.*).

Ms. Adams states the daily pain she experiences keeps her from working more than fifteen hours a week. (Tr. 72). She has difficulty lifting, carrying, and standing for prolonged periods and gets migraines two to three times a week despite medication. (Tr. 73). The migraines vary in duration, between a few hours and a few days. (*Id.*). About four or five times a month, she must shut herself in a dark room and try to sleep it off. (Tr. 73-74).

Ms. Adams takes Xanax twice a day for anxiety and is working with her doctor to find a depression medication that works for her. (Tr. 74, 76). She has seen counselors in the past but took a break from counseling when she underwent a total hysterectomy in March 2020. (Tr. 75). In September 2020, she was diagnosed with thyroid cancer. (*Id.*). She recently told her case manager at Family Solutions she would like to start looking for a counselor. (*Id.*). When working, she avoids conversation with pizza delivery customers and "can't make eye contact." (Tr. 76). Ms. Adams tries not to self-isolate from her children because they need her, but there are days where she puts them to bed early so that she can lie down and be alone. (Tr. 80). She has crying spells three to four times a day, triggered by her own thoughts and when her manager yells at her when she makes a mistake at work. (Tr. 81). She closes herself into the mop room at work to cry before finishing her shift. (*Id.*).

VE Yi then testified. He classified Ms. Adams' past work as delivery driver (DOT #299.477-010), unskilled SVP 2, medium exertion as generally performed, light exertion as actually performed. (Tr. 86). The ALJ asked VE Yi if a hypothetical individual of Ms. Adams' age, education, and work experience could perform Ms. Adams' past relevant work if limited to light work and further restricted to occasionally climbing ramps, ladders, ropes, and scaffolds; frequently stoop; occasionally crawl; avoid concentrated exposure to loud or very loud environments; occasionally reach overhead with the bilateral upper extremities; understand, remember, and carry out simple instructions in a routine work setting; can respond appropriately to supervisors co-workers and work situations if the tasks performed are goal-oriented but not at a production rate pace; and limited to superficial interaction, that which does not require negotiating with, instructing, persuading, or directing the work of others. (Tr. 86-87). VE Yi stated the individual could not perform as a pizza delivery driver but could perform other light, unskilled, SVP 2 positions, including housekeeping cleaner (DOT #323.687-014, 250,000 positions nationwide), mailroom clerk (DOT #209.687-026, 120,000 positions nationwide), and produce sorter (DOT #529.687-186, 80,000 positions nationwide). (Tr. 87).

If limited to sedentary work and subject to the same restrictions as in the first hypothetical, the individual could not perform as a pizza delivery driver but could perform other sedentary, unskilled, SVP 2 positions, including electronic inspector (DOT #726.684-110, 40,000 positions nationwide), laboratory tester (DOT #539.485-010, 12,000 positions nationwide), and final assembler (DOT #713.687-018, 25,000 positions nationwide). (Tr. 88).

The VE also testified an individual who is off task 20% of the workday is precluded from competitive, full-time employment, as is an individual who is continuously absent two times per

month. (*Id.*). Also precluded from competitive employment are individuals requiring an isolated work environment and those requiring frequent redirection from supervisors. (Tr. 89-90).

### THE ALJ'S DECISION

The ALJ's decision included the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since July 31, 2019, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: disorder of the spine (cervical and thoracic); migraine; depressive disorder; and anxiety disorder (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except occasionally climb ladders, ropes, or scaffolds; frequently stoop; occasionally crawl; occasionally reach overhead with the bilateral upper extremities; must avoid concentrated exposure to a loud or very loud work environment; can understand, remember, and carry out simple instructions in a routine work setting; can respond appropriately to supervisors, coworkers, and work situations if the tasks performed are goal oriented, but not a production rate pace, and the work does not require more than superficial interaction, meaning that it does not require negotiating with, instructing, persuading, or directing the work of others.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on July 22, 1988, and was 31 years old, which is defined as a younger individual age 18-49, on date the application was filed (20 CFR and 416.963).

7. The claimant has at least a high school education (20 CFR 416.964).

8. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 416.968).

9.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969, and 416.969a).

10.     The claimant has not been under a disability, as defined in the Social Security Act, since July 31, 2019, the date the application was filed (20 CFR 416.920(g)).

(Tr. 32-42).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)).

In determining whether the Commissioner's findings are supported by substantial evidence, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice" within which the Commissioner can act, without fear of court interference.

11

*Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

However, "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Social Security*, 531 F. App'x 636, 641 (6th Cir. 2013) (cleaned up).

A district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted). Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not observe its own procedures and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546–47 (6th Cir. 2004).

### STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 416.920—to determine if a claimant is disabled:

1.    Was claimant engaged in a substantial gainful activity?

2.    Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3.    Does the severe impairment meet one of the listed impairments?

4.    What is claimant's residual functional capacity and can claimant perform past relevant work?

5.    Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity (RFC) to perform available work in the national economy. *Id.* The ALJ considers the claimant's RFC, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. § 416.920(b)-(f); *see also Walters,* 127 F.3d at 529.

## DISCUSSION

Ms. Adams claims the ALJ did not properly apply the criteria of Social Security Ruling (SSR) 16-3p when analyzing her subjective complaints (Pl's Br., ECF #10, PageID 920), committed harmful error when he modified the definition of "superficial" interaction (*Id.* at PageID 926), and committed harmful error when he based his findings on unreliable VE testimony (*Id.* at PageID 927).

**A.    Symptom Evaluation**

Under SSR 16-3p, the ALJ follows a two-step process for evaluating an individual's symptoms. First, the ALJ determines whether the individual has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. SSR 16-3p, at *3. Second, the ALJ evaluates the intensity and persistence of the individual's symptoms and determines the extent to which they limit the individual's ability to perform work-related activities. *Id*. At the second step, the ALJ considers all relevant evidence, including a claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, an individual receives or has received for relief from pain or other symptoms; any measures other than treatment an individual uses or used to relieve pain or other symptoms; and any other factor concerning the claimant's functional limitations and restrictions due to pain and other symptoms. 20 C.F.R. § 404.1529(c)(3); *see also* SSR 16-3p, at *7-8. The ALJ is not required to analyze all seven factors, only those that are germane to the alleged symptoms. *See, e.g., Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005) ("The ALJ need not analyze all seven factors identified in the regulation but should provide enough assessment to assure a reviewing court that he or she considered all relevant evidence.").

The ALJ is not required to accept the claimant's subjective complaints and may discount the claimant's subjective testimony when the ALJ finds it inconsistent with objective medical and other evidence. *Jones*, 336 F.3d at 475-76. The ALJ's decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the ALJ

14

evaluated the individual's symptoms. SSR 16-3p, at *10. The ALJ need not use any "magic words," so long as it is clear from the decision as a whole why the ALJ reached a specific conclusion. *See Christian v. Comm'r of Soc. Sec.*, No. 3:20-CV-01617, 2021 WL 3410430, at *17 (N.D. Ohio Aug. 4, 2021).

An ALJ's determination of subjective evidence receives great deference on review. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012). This Court must accord great weight and deference to the ALJ's opinion of subjective evidence, due to the ALJ's opportunity to observe a claimant's demeanor during the hearing—an opportunity this Court is not afforded in its review. *Jones*, 336 F.3d at 476. Absent compelling reason, this Court may not disturb the ALJ's analysis of the claimant's subjective complaints or the conclusions drawn from them. *Baumhower v. Comm'r of Soc. Sec.*, No. 3:18-CV-0098, 2019 WL 1282105, at *2 (N.D. Ohio Mar. 20, 2019). "As long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess[.]" *Ulman*, 693 F.3d at 713-14.

In support of her argument, Ms. Adams summarizes the testimony and medical evidence and conclude it supports a finding that pain precludes her from working. (ECF #10 at PageID 921-25). She also claims the ALJ did not articulate a supportable rationale for discounting her symptoms and the decision is not supported by substantial evidence. (*Id.* at PageID 925). I disagree.

After review of the record, including hearing testimony and medical records, the ALJ evaluated Ms. Adams' symptoms and determined as follows:

> Therefore, the evidence supports that the claimant experienced limiting signs and symptoms associated with her severe impairments. Imaging of the claimant's cervical and thoracic spine showed mild age-related spondylosis. Significant associated clinical findings included decreased/painful range of motion, decreased

15

strength, decreased balance, tightness along the bilateral paraspinals, rhomboids, and cervical muscles. She required medication management for her migraine headaches. She received medication management, therapy, and case management services for reported psychological symptoms that included low mood, missing work, not wanting to get out of bed, loss of interest in her children, loss of appetite, anxiety, tearfulness, panic attacks, agitation, irritability, anger, decreased socialization, as well as feelings of hopelessness, worthlessness, and feeling overwhelmed. Associated clinical findings included a sad, flat, guarded, and disheveled presentation, anxiousness, distractibility, anxious and/or depressed mood, slowed speech and thinking, a depressed attitude.

However, the claimant's statements about the intensity, persistence, and limiting effects of her symptoms are inconsistent because the level of limitation alleged is not altogether supported by the objective findings. The treatment reflects limited treatment for her disorder of the back (cervical and thoracic) and migraine headaches since the alleged onset date. Clinical findings reflect evidence of intact musculoskeletal range of motion, normal muscle tone, normal coordination, and no noted gait abnormalities. She testified that she was able to care for her children and work at least part-time. She described some improvement in mood, ability to socialize, and complete tasks with treatment. Clinical findings reflect evidence of normal memory and intact/normal cognition. Furthermore, the claimant exhibited a normal mood, affect, and judgment, and presented as cooperative, friendly, and with normal behavior.

Nonetheless, functional limitations are warranted. To account for the claimant's reported pain associated with her spondylosis in her cervical and thoracic spine, she should stand/walk no more than six hours in an eight-hour workday, lift/carry no more than 20 pounds occasionally and 10 pounds frequently, and only occasionally climb ladders, ropes, or scaffolds. Due to loss of musculoskeletal range of motion, she should only frequently stoop, occasionally crawl, and only occasionally reach overhead with the bilateral upper extremities. To avoid exacerbating her migraine headaches, she should avoid concentrated exposure to a loud or very loud work environment. Due to evidence of distractibility, slowed thinking, and reported loss of interest/motivation, she is limited to understand, remember, and carry out simple instructions in a routine setting. To avoid exacerbating her symptoms of anxiety and tearfulness with stress, she was able to respond appropriately to supervisors, coworkers, and work situation, if the tasks performed are goal oriented, but not at a production rate pace. Further, due to her mood abnormalities and reported irritability and difficulty interacting with others, she should have no more than superficial contact with others, meaning performing work that does not require negotiating with, instructing, persuading, or directing the work of others.

(Tr. 39-40) (internal citations omitted).

This excerpt evidences that the ALJ's decision contains specific reasons for the weight given to Ms. Adams' symptoms. The ALJ relied on the largely normal objective medical evidence, including examinations and imaging, Ms. Adams' daily activities, and her own reports of improvement to medical professionals to discount her statements about the intensity, persistence, and limiting effects of her symptoms. The hearing testimony and medical records support these findings. Moreover, the ALJ clearly articulated this information such that this Court can trace the path of his reasoning. Ms. Adams has not identified a compelling reason to disturb this analysis, or the conclusions drawn from it and, therefore, is not entitled to remand on this basis.

**B.    RFC and Superficial Interaction**

Ms. Adams next takes issue with the RFC assessment's limitation to "superficial interaction," which the ALJ defined as not requiring negotiating with, instructing, persuading, and directing the work of others. (ECF #10 at PageID 926). Ms. Adams defines superficial interaction to exclude "thoroughgoing, in-depth, comprehensive, or detailed interactions." (*Id.* at PageID 927) (citing *Metz v. Kijakazi*, No. 1:20cv2202, 2022 WL 4465699, at *9 (N.D. Ohio Sept. 26, 2022)). She claims the ALJ "erroneously expanded the definition of superficial" when assessing her RFC and the expanded definition was harmful because "the testimony of the [VE] was based on this definition and not the more limiting application of superficial interaction with others." (*Id.* at PageID 927).

The term "superficial interaction" is not defined under the Dictionary of Occupational Titles ("DOT") or Selected Characteristics of Occupations ("SCO"). *See Stoodt v. Comm'r of Soc. Sec.*, No. 3:20-CV-2370, 2022 WL 721455, at *16 (N.D. Ohio Jan. 13, 2022), *report and recommendation adopted*, 2022 WL 716105 (N.D. Ohio Mar. 10, 2022). However, a limitation to

superficial interaction suggests a limitation related to the quality or nature of the interaction. *Lindsey v. Comm'r of Soc. Sec.*, No. 2:18-cv-18, 2018 WL 625473, at *4 (S.D. Ohio Nov. 30, 2018), *report and recommendation adopted*, 2019 WL 133177 (S.D. Ohio Jan. 8, 2019); *Redd v. Comm'r of Soc. Sec.*, No. 1:20-cv-222, 2021 WL 1960763, at *4 (W.D. Mich. May 17, 2021).

In concluding that this argument is meritless, I find *Betz v. Comm'r of Soc. Sec.*, 3:22-CV-2408 (N.D. Ohio Nov. 8, 2022), instructive. In *Betz*, the court upheld the ALJ's definition of "superficial contact" as "no tasks involving arbitration, negotiation, confrontation, directing the work of others, persuading others, or being responsible for the safety or welfare of others," concluding the ALJ did not need to provide explicit reasoning for why he defined superficial in the way he did; rather, the ALJ needed to explain why he determined the claimant was limited to superficial interaction *as he defined it*, and it is sufficient that the record not be clearly contrary to that definition. *Id.* at *11.

The ALJ explained Ms. Adams had only a moderate limitation in her ability to interact with others, acknowledging Ms. Adams reported difficulty engaging in social situations and getting along with others, but emphasizing her ability to spend time with family and live with six children and mental status examinations showing Ms. Adams was friendly, cooperative, and exhibited normal behavior. (Tr. 35). The ALJ's summary of the medical evidence included largely normal clinical findings on examination and reports of improvement in mood and ability to socialize. (Tr. 38-40). Substantial evidence supports the ALJ's finding. (*See* Tr. 293, 413, 454-55, 458, 478-79, 723, 762, 785, 808, 816). I find it was reasonable for the ALJ to have defined "superficial" in the manner he did, and it was reasonable, based on persuasive evidence in the record, to limit Ms. Adams to superficial interaction. Ms. Adams is not entitled to remand on this basis.

C.      **Step Five Determination**

Ms. Adams contends the ALJ erred by not resolving a conflict between the RFC and the VE's testimony. (ECF #10 at PageID 928). Specifically, she alleges the jobs the VE identified require frequent reaching or work at a production rate pace. (*Id.*).

At Step Five, the ALJ must make a finding "supported by substantial evidence that [claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Hum. Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (internal quotation and citation omitted). "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question." *Id.* If an ALJ relies on the VE's testimony in response to a hypothetical, that hypothetical must accurately portray the claimant's limitations. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516–17 (6th Cir. 2010).

During testimony, VE's commonly use the DOT, which is a list of "maximum requirements of occupations as generally performed;" however a VE "may be able to provide more specific information about jobs or occupations than the DOT." SSR 00-4p, at *2. A VE has the ability to craft his answer in response to an individualized hypothetical RFC with potential limitations not contemplated by the DOT. *See Beinlich v. Comm'r of Soc. Sec.*, 345 Fed. App'x 163, 168 (6th Cir. 2009) ("[An] ALJ may choose to rely on the VE's testimony in complex cases, given the VE's ability to tailor her finding to an 'individual's particular [RFC].'"). "[N]either the DOT nor [the expert's testimony] automatically trumps when there is a conflict." SSR 00-4p, at *2.

SSR 00-4p requires an ALJ to elicit a reasonable explanation from a VE when there is an apparent conflict between the VE's testimony and the DOT:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent

unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

*Id.* at \*2.

The ALJ has an affirmative responsibility to "inquire, on the record" regarding any inconsistency between the VE's testimony and the DOT. *See id.* Beyond this initial inquiry, the Sixth Circuit has held the ALJ need not further investigate the accuracy of a VE's testimony "especially when the claimant fails to bring any conflict to the attention of the [ALJ]." *Ledford v. Astrue*, 311 Fed. App'x. 746, 757 (6th Cir. 2008); *see also Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009). That obligation falls to the claimant's counsel. *Beinlich*, 345 Fed. App'x. at 168. "Absent an objection to the vocational expert's testimony, [an] ALJ reasonably relie[s] on the testimony." *Staymate v. Comm'r of Soc. Sec.*, 681 Fed. App'x. 462, 468 (6th Cir. 2017) (citing *Martin v. Comm'r of Soc. Sec.*, 170 Fed. App'x. 269, 374 (6th Cir. 2006)) ("Nothing in SSR 00–4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct.").

In this case, before posing hypothetical questions, the ALJ asked the VE to "please let me know if the opinion that you give conflicts with the *Dictionary of Occupational Titles* or the *Selective Characteristics of Occupations*." (Tr. 86). After posing each hypothetical question, the ALJ again asked if the testimony was consistent with the DOT and the VE said it was. (Tr. 88). Ms. Adams' counsel did not object and did not ask any questions about the alleged inconsistencies. *Id.* Absent an objection, the ALJ was not obligated to seek out conflicts. *See Staymate*, 681 Fed. App'x. at 468; *Martin*, 170 Fed. App'x. at 374.

20

Ms. Adams notes her counsel submitted post-hearing evidence that the jobs the VE identified were not consistent with the DOT. (ECF #10 at PageID 928). To the extent Ms. Adams claims this rendered the ALJ's reliance on the VE's testimony improper, she offers no support that the ALJ was required to address post-hearing objections to the testimony. Indeed, there is no such requirement. *See Zimmerman v. Comm'r of Soc. Sec.*, No. 1:18CV1233, 2019 WL 4736267, at *8 (N.D. Ohio Sept. 27, 2019).

Ms. Adams also cites *Bennett v. Comm'r of Soc. Sec.*, 1:16-cv-227, 2016 WL 7395795, at *6-7 (N.D. Ohio Dec. 2, 2016), to argue that remand is necessary to resolve the conflict between the VE's testimony and the DOT and SCO regarding reaching. (ECF #10 at PageID 929). That case is easily distinguishable, however, because in *Bennett*, the ALJ did not meet his affirmative duty to ask whether the VE's opinions were consistent with the DOT. *See* 2016 WL 7395795, at *6. In fact, many courts within this judicial district have "upheld Step Five determinations despite an actual conflict between the RFC and DOT where the ALJ inquired about conflicts, conflicts were not brought to the ALJ's attention, and the VE testified that no conflict exists." *Cross v. Comm'r of Soc. Sec.*, 1:16-cv-2003, 2017 WL 2684426, at *5 (N.D. Ohio June 2, 2017) (collecting cases), *report and recommendation adopted*, 2017 WL 2671089 (N.D. Ohio June 21, 2017). This holds true even in instances where the claimant, post-hearing, points out conflicts between the VE testimony and the DOT. *Id.* at *5-6.

Because the ALJ fulfilled his obligation under SSR 00-4p by inquiring of the VE and counsel for Ms. Adams did not ask questions on the subject or object to the VE's testimony, the ALJ could reasonably rely on the VE's unchallenged testimony. I conclude the ALJ did not err at Step Five.

CONCLUSION

Following review of the arguments presented, the record, and the applicable law, I

**AFFIRM** the Commissioner's decision denying supplemental security income.

Dated: July 21, 2023

_____

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE